UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| MOTHER ZION TENANT ASSOCIATION,<br>DEBORAH TAYLOR LOW & GAIL WILDER, | 08 Civ. 2937 (MGC/HP) |
| Plaintiffs, | COMPLAINT |
| -against- | |
| ALPHONSO JACKSON, in his capacity as the<br>Secretary for the UNITED STATES DEPARTMENT<br>OF HOUSING & URBAN DEVELOPMENT, and<br>the UNITED STATES DEPARTMENT OF<br>HOUSING & URBAN DEVELOPMENT,<br>and MOTHER ZION ASSOCIATES, L.P., | |
| Defendants. | |

-------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1. Plaintiffs are low income tenants in a project subsidized by the United States Department of Housing and Urban Development ("HUD") under a project-based Section 8 contract. Plaintiffs seek a declaration that HUD has failed in its statutory duties to ensure that the tenants of the development received proper notice of their landlord's intention to opt out of the project-based Section 8 program. HUD's failure requires that the contract be extended and that the owner be prohibited from increasing rents or evicting tenants, except for cause, until a proper notice is given.

2. Plaintiffs seek an injunction prohibiting HUD from permitting the landlord from opting out of the Section 8 program, and directing HUD to offer the owner a renewal contract. Plaintiffs further seek an injunction prohibiting the landlord from opting out of the project-based Section 8 program, from charging tenants any increases above the share of the rent for which

1

they are now responsible, and from evicting any tenants of the premises subject to these proceedings (except for good cause) until a proper Section 8 opt-out notice has been served and a year has elapsed since the date of service of that notice.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. Sec. 1391(e) because the property is located in this district.

## PARTIES

5. Plaintiff DEBORAH TAYLOR LOW resides at 2640 8th Avenue, New York, NY, apartment 1-D. Ms. Low is the president of the Mother Zion Tenant Association.

6. Plaintiff GAIL WILDER resides at 2640 8th Avenue, New York, NY, apartment 4-G.

7. Plaintiff MOTHER ZION TENANT ASSOCIATION is a tenant association representing tenants of over 60 percent of the occupied dwelling units in the assisted rental housing property located at 2640 8th Avenue, New York, NY, or also known as 2640 Frederick Douglas Boulevard, New York, NY, the Mother Zion-McMurray Apartments.

8. Defendant ALPHONSO JACKSON is the Secretary of the U.S. Department of Housing and Urban Development ("HUD") and as such is responsible for the administration of all of HUD's programs. He is being sued in his official capacity. He maintains an office at 26

Federal Plaza, New York, New York 10278.

9.  Defendant UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT is a party to the Section 8 contract at the Mother Zion Apartments.

10. Defendant MOTHER ZION ASSOCIATES, L.P. is a New York limited partnership with its principal office located at 1457 Flatbush Avenue, Brooklyn, NY. Defendant is the owner of Mother Zion-McMurray Apartments, a 76-unit multiple dwelling.

## STATUTORY AND REGULATORY SCHEME

The Section 8 Program

11. Congress enacted the United States Housing Act of 1937 "to remedy the unsafe and unsanitary conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income." 42 U.S.C. § 1437. The Act mandates HUD to exercise its "powers, functions, and duties consistently with the national housing policy declared by this Act." 42 U.S.C. § 1441. In addition to public housing, the federal housing programs include rental assistance, both project-based and tenant-based, under Section 8 of the United States Housing Act of 1937, 42 U.S.C.A. § 1437f, and mortgage insurance and subsidies under the National Housing Act, 12 U.S.C. §§ 1715(l) and 1715z-1b.

12. Under the project-based Section 8 program, HUD enters into Housing Assistance Payment ("HAP") contracts with private property owners and determines the maximum monthly rate that the owner may charge for each dwelling. Under the terms of the HAP contract, the tenants pay the property owner a percentage of their adjusted income, typically about 30 percent. The difference that remains between the HAP contract rent and the portion provided by the

tenant is paid to the owner by HUD in the form of an assistance payment or subsidy.

13. Federal law contains no requirement that owners renew project-based Section 8 contracts. However, Congress requires that "not less than one year before termination" of a project-based Section 8 subsidy contract, an owner who elects not to renew the contract is required to "provide written notice to [HUD] and the tenants involved of the proposed termination." 42 U.S.C.§ 1437f(c)(8).

14. "In order for an Owner to opt-out of the project-based Section 8 program, they must satisfy all notification requirements." HUD "Section 8 Renewal Policy," January 19, 2001, § 11-2(A)(1).

15. The one-year notice must be served by delivery directly to each unit in the project or mailed to each tenant. HUD "Section 8 Renewal Policy," § 11-4(B).

16. HUD is required to review the notice to ensure that the owner provided "an acceptable one-year notification to the tenants" and to HUD. HUD "Section 8 Renewal Policy," § 8-1(A)(3)(b).

17. If the owner's notice is not adequate for any reason, the owner must provide an acceptable one-year notice to HUD and the tenants. During the one year period after adequate notice is provided tenants may not be evicted and tenants' rent shares may not be increased. 42 U.S.C. 1427f(c)(8).

18. If a new notice is required, HUD must offer the owner a short-term renewal contract to cover the notice period. HUD "Section 8 Renewal Policy," § 8-1(A)(3)(b)(ii).

19. The execution of short-term extension contracts does not, in general, excuse landlords from complying with the one year notice requirement. HUD's Section 8 Renewal

Policy clearly states:

> In general, upon execution of a short-term contract, the Owner must provide a one-year notification to tenants and HUD/CA. Over the course of this one-year period, the Owner and HUD/CA may agree to additional short-term extensions. The Owner is not required to provide a new Notice each time a subsequent short-term extension is granted within the one year time-frame of the Notice. If the Owner accepts another short-term renewal after the 12-month notification period has expired, the Owner will be subject to another 12-month notification requirement.

HUD "Section 8 Renewal Policy" § 11-4(E).

20. Exceptions to this general policy apply in only two narrowly defined situations:

> 1) Where the Owner has fulfilled his/her notification requirement, but agrees to execute a contract for less than one year <u>solely to provide HUD with enough time to provide Section 8 tenant-based assistance</u>, [or]
>
> 2) Where an Owner provided tenants and HUD with the proper notification of their intent to opt-out and then accepts a short-term renewal <u>to consider accepting a Section 8 contract under the terms of Mark-Up-To-Market</u>,

<u>Id.</u>, emphasis added.

21. A property is eligible for a Mark-Up-To-Market renewal only where comparable market rents exceed the HUD-established "Fair Market Rent" which forms the usual maximum for project-based Section 8 projects. HUD "Section 8 Renewal Policy" § 3-2( C).

22. In addition to giving the one-year notice to the tenants and to HUD, the owner must also, 120 days before contract expiration, send HUD a "Contract Renewal Request Form," electing "Option Six" (Opt-out), which ensures that enhanced vouchers will be processed in a timely manner. HUD "Section 8 Renewal Policy," Ch. 8.

23. If the owner properly opts out of the project-based Section 8 program, HUD "will provide tenant-based rental assistance to all eligible residents, enabling them to choose the place

they wish to rent, which is likely to include the dwelling unit in which they currently reside." 42 U.S.C. §§ 1437f(c)(8)(a); 1437f(t).

24.     If tenants choose to stay in their current units, HUD issues those tenants "enhanced vouchers" that cover the full market rents for their apartments.  However, before receiving vouchers, tenants residing at the project at the time of conversion must successfully pass a screening by the local public housing authority that administers the vouchers.  HUD PIH Notice 2001-41, § I(B)(2).  Tenants will be compelled to move with their vouchers if their apartments do not meet federal housing quality standards.  Id., § I(B)(7).

The Administrative Procedure Act:

25.     The Administrative Procedure Act, 5 U.S.C. § 702, provides that

[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

26.     The Administrative Procedure Act further states that the reviewing court shall

hold unlawful and set aside agency action, findings and conclusions found to be –
(A) arbitrary and capricious, an abuse of discretion or otherwise not in compliance with law [or] (D) without observance of procedure required by law.

5 U.S.C. § 706.

**STATEMENT OF FACTS**

27. The apartment building forming the assisted rental housing property that is the subject of these proceedings is the Mother Zion-McMurray Apartments ("Mother Zion Apartments"), located at 2640 8th Avenue, New York, NY, also known as 2640 Frederick Douglass Boulevard, New York, NY. This building contains 76 apartments of which 75 apartments are subsidized and one is a superintendent's apartment.

28. The building was constructed in or about 1983, pursuant to an Urban Renewal Plan.

29. MOTHER ZION ASSOCIATES, L.P. (the "Owner"), a New York limited partnership, acquired title to the land in May 1982, subject to a Land Disposition Agreement and a Regulatory Agreement. In 1984, the Owner obtained a $4.6 million mortgage from the NYS Housing Development Corporation, which was subject to an additional Regulatory Agreement.

30. Upon information and belief, the current mortgage of approximately $4.6 million is held by P.W. Funding Inc., with a final maturity date of April 1, 2024.

31. Upon information and belief, in or about 1984, the Owner signed a Housing Assistance Payments contract with HUD for receipt of a project-based Section 8 subsidy for the development. The subsidy has the result of keeping tenant rents at 30% of each household's income, and HUD pays the difference between the tenants' rent share and the contract rents for the apartments. Upon information and belief, the latest contract for the Mother Zion Apartments will expire on March 31, 2008.

32. Upon information and belief, prior to 2006, the Mother Zion Apartments were placed on HUD's "Watch List" because the contract rents had been reduced to market levels, but

the owner had not opted to restructure its mortgage, thus jeopardizing the long term viability of the building.

33.    On or about March 1, 2006, the Owner sent a notice to the tenants at Mother Zion Apartments informing them that it was electing to opt out of the Section 8 Program, effective March 31, 2007.

34.    In June 2006, the Tenants Association filed suit against the Owner and the NYC Department of Housing Preservation and Development to enforce its right under the newly enacted "Tenant Empowerment Act," N.Y.C. Admin. Code 26-801 et seq. to purchase their building and preserve the project-based Section 8 contract.

35.    In January 2007, the Owner and HUD agreed to enter into a "Watch List" contract extension to June 30, 2007, based on the pendency of the litigation.

36.    In April 2007, the Supreme Court, New York County, dismissed the tenants' petition. An appeal of the Court's order is scheduled to be argued in April 2008.

37.    In May 2007, HUD advised tenant representatives that the Section 8 contract would be extended for one year – through June 2008. However, the actual contract extension was for only nine months – until March 31, 2008.

38.    In late August 2007, tenant representatives again met with HUD, and this time were informed that the contract would expire in March 2008, and that no new opt-out notice would be required.

39.    In November 2007, tenant representatives met with HUD, and were informed that the Owner would be required to renew the contract after March 2008 because the Owner had not served the required notice under 42 U.S.C.§ 1437f(c)(8) after the renewal of the contract in

March 2007.

40. However, in March 2008, HUD informed tenant representatives that the Owner would <u>not</u> be required to issue a new notice, and would be allowed to terminate the contract either on March 31, 2008 or June 30, 2008.

41. At no time since March 1, 2007, did the Owner send any notice to the tenants regarding the impending expiration of the HAP contract.

42. Since the Owner failed to give tenants the statutory notice, HUD is obligated to enforce the requirements of its Renewal Policy and the governing statute, and require the Owner to renew the contract for an additional year.

43. If the Section 8 contract expires without the statutory notice, plaintiffs will be prejudiced in a variety of ways.

44. Although tenants may be eligible to receive enhanced Section 8 vouchers to pay their rents after the expiration of the contract, such vouchers are contingent upon the continued appropriation of funds for the voucher program.

45. Federal law prohibits the use of vouchers in apartments that do not meet Housing Quality Standards. DHPD lists 61 open Housing Maintenance Code violations in the building and of these, 4 have been classified immediately hazardous "C" violations and 36 as hazardous "B" violations. Tenants in apartments containing these violations will be unable to use their vouchers to remain in place.

46. In addition, the building experiences chronic problems with the elevator, the heating system and plumbing, which could lead to the disapproval of all tenants for receipt of tenant-based subsidies for their current apartments.

47. Those tenants with vouchers who cannot stay at Mother Zion Apartments will have difficulty finding a new apartment, even with their vouchers. In a study entitled "Study on Section 8 Voucher Success Rates" published by HUD in November 2001, HUD found that in New York City, success rates for voucher holders had declined and that only 57% of voucher holders were successful in finding apartments. The "success rate" was defined as the percentage of all families that were provided vouchers who leased a housing unit meeting the program requirements within the allotted amount of time. That rate would be significantly lower if tenants who used their vouchers in place were factored out. Moreover, Hispanic and African-American renters and homebuyers face significant discrimination in the New York City housing market.

48. Tenants who cannot locate alternative housing within six months will lose their vouchers, and will then become homeless because they will be unable to afford the full rents charged at Mother Zion Apartments.

49. Tenants whose income is currently too high for Section 8 will also lose valuable rights as a result of the voucher conversion. Under the project based contract, over-income tenants can become eligible for a subsidy if their income declines for any reason in the future. After the conversion to vouchers, however, such tenants will be unprotected in the event of a future loss of income due to illness, retirement, or other causes.

50. Even if all or most tenants are able to use their vouchers to remain at Mother Zion, over time, the voucher conversion robs the community of an affordable housing resource. As tenants gradually move away with their vouchers, the vacant apartments will be rented at market rates that are not affordable to low and moderate income renters in the community.

51. Due to the owner's failure to give proper notice to the tenants, and due to HUD's failure to communicate accurately the contract expiration date to the tenants and their advocates, the tenants were deprived of an opportunity to attempt to arrange for the preservation of their project-based subsidy, through a preservation sale or by other means.

52. The tenants are currently litigating with the Owner its obligation to sell the building to the tenants pursuant to Local Law 79, N.Y.C. Admin Code § 26-801 et seq.. An appeal in that case is scheduled for argument in April 2008. If the contract terminates before a decision is rendered, the tenants will be deprived of a potential opportunity to purchase the building in time to preserve the project-based contract.

Facts regarding plaintiff Deborah Taylor Low

53. Plaintiff DEBORAH TAYLOR LOW resides at the Mother Zion-McMurray Apartments, 2640 8th Avenue, Apt. #1D, New York, New York.. She is the president of the Mother Zion Tenant Association.

54. Ms. Low has resided in her apartment for approximately 8 years and in the building for approximately 24 years. She resides in her three bedroom apartment with her 14 year old granddaughter, Yasmine Williams.

55. Ms. Low earns approximately $1,080.00 per month as a cashier at Duane Reade. Her rent is subsidized by a project-based Section 8 subsidy, which reduces her rental share to $227.00 per month. Upon information and belief, the market rate for her apartment would be approximately $1,700 per month.

56. If the project based subsidy is terminated and Ms. Low am issued a tenant-based

Section 8 voucher, she will likely be unable to use the voucher in her current apartment because it does not comply with Federal Housing Quality Standards. The elevator in the building is frequently inoperable for weeks at a time. In the past, the boiler in the building broke down frequently interrupting heat or hot water service for days. Ms. Low's bathroom floor is leaking and her bathroom has recurring mildew. Also, in the past, every three to four months, the sewage has backed up and because Ms. Low lives on the first floor, the sewage has come into her apartment via the bathtub and toilet. As a temporary remedy, the superintendent has to shut down the water for the entire building to prevent further sewage coming into the building until a plumber can fix the problem. Besides the awful stench that can be smelled throughout the building, the tenants have been without water for hours and sometimes overnight until the problem is fixed. Finally, mice frequently find their way into the apartment.

57. If Ms. Low is compelled to search for a new apartment, she will have difficulty finding one because there are very few apartments to rent in general in New York City and even fewer where the landlord that will accept Section 8 vouchers.

58. If Ms. Low cannot locate alternative housing within six months, she will lose her voucher and she and her family could become homeless because she would be unable to afford the full rents charged at the Mother Zion Apartments.

Plaintiff Gail Wilder

59. Plaintiff GAIL WILDER resides at the Mother Zion-McMurray Apartments, 2640 8th Avenue, Apt. #4G, New York, New York, and is a member of the Mother Zion Tenant Association.

60. Ms. Wilder has resided in her apartment for approximately 9 years. She lives in her two bedroom apartment with her two sons, Douglas Wilder, 22 years old, and Tyrell Gaynair, 8 years old.

61. Ms. Wilder is not currently employed. Her sole current source of income household is a $13 per day subsidy from the City of New York through its Child Care Program. Ms. Wilder's rent is subsidized by a project-based Section 8 subsidy which sets her rent share at $149.00 per month. Upon information and belief, the market rate for her apartment is approximately $1,400 per month.

62. If the project based subsidy is terminated and Ms. Wilder is issued a voucher, she will likely be unable to use the voucher in her current apartment because it does not comply with Federal Housing Quality Standards. The elevator in my building is frequently inoperable for weeks at a time, and the boiler has frequently broken down, leaving tenants without heat or hot water for days. Ms. Wilder's bathroom and hallways need painting, and the ceiling in her bathroom is cracking. Her refrigerator door does not shut properly, causing accelerated food spoilage and an unnecessary waste of energy, and her stove does not operate correctly. In her son's bedroom, there is a loose window that needs to be replaced, and the doorknob to the front door of the apartment keeps breaking, creating a security risk. Finally, mice frequently find their way into the apartment.

63. If Ms. Wilder is compelled to search for a new apartment, she will have difficulty finding one because there are very few apartments to rent in general in New York City and even fewer that will accept Section 8 vouchers.

64. If Ms. Wilder cannot locate alternative housing within six months, she will lose

her voucher and she and her family will likely become homeless because she will be unable to afford the full rents charged at the Mother Zion Apartments.

Plaintiff Mother Zion Tenant Association

65. The Mother Zion Tenant Association includes most of the tenants at the Mother Zion Apartments. As an organization, the Tenant Association is concerned with preserving the building's project based Section 8 subsidy for the benefit of the current tenants and their families, and for members of the community who may one day live there.

## FIRST CAUSE OF ACTION

66. The facts stated in paragraphs 1 - 64 are realleged as if restated herein.

67. HUD's violation of federal law and its own procedures, by failing to require the owner to properly serve the "opt-out notice," and failing to require the extension of the project-based contract pending service of a proper notice, was arbitrary, capricious, and otherwise not in accordance with law and without observance of procedure required by law, in violation of 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION

68. The facts stated in paragraphs 1 - 64 are realleged as if restated herein.

69. The owner's failure to provide a proper one-year notice to the tenants of its intention to opt out of the Section 8 program violated 42 U.S.C. § 1437f(c)(8) and HUD's

implementing regulations and procedures. Pursuant to that authority, the owner must be enjoined from opting out of the project-based Section 8 program, from collecting any rents in excess of the tenants' current rent shares, and from evicting tenants until such time as proper notice is given and a year has elapsed.

## REQUEST FOR RELIEF

WHEREFORE, plaintiffs request that this Court:

(1) enter a final judgment pursuant to 28 U.S.C. §§ 1331, 1343(3) and 1337 of the Federal Rules of Civil Procedure declaring that:

    (a)    HUD's failure to require service of a proper opt-out notice was a violation of federal law, of HUD's own policies and procedures and of 5 U.S.C. § 706;

    (b)    HUD's failure to require the owner to extend the development's Section 8 contract until one year after the tenants received a one-year notice in compliance with federal law is a violation of federal law, HUD's own policies and procedures and 5 U.S.C. § 706;

    ( c)    The owner's failure to provide a proper one-year notice to the tenants of the development is a violation of 42 U.S.C. § 1437f(c)(8) and pursuant to that statute, until proper notice is given and a year has elapsed, the owner may not opt-out of the project based Section 8 program and may not collect any rent increases from the tenants or evict any tenants except for good cause.

(2) issue an injunction prohibiting HUD from permitting the owner's opt-out from the project-based Section 8 program, and requiring HUD to offer to renew the Section 8 contract for the premises until one year has elapsed after proper notice has been given to the tenants;

(3) issue an injunction prohibiting MOTHER ZION ASSOCIATES, L.P. from opting out of the project-based Section 8 program, or raising tenant rents or evicting tenants for other than

good cause until one year has elapsed after the service of proper notice on the tenants of the owner's intention to opt out of the Section 8 program;

 (4) grant such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
     March 19, 2008

            Yours truly,

            RAUN RASMUSSEN, ESQ.
            LEGAL SERVICES NEW YORK CITY
            LEGAL SUPPORT UNIT
            EDWARD JOSEPHSON, ESQ., of Counsel
            350 Broadway
            New York, NY 10014
            Attorneys for Plaintiffs
            (718) 237-5538

       By: _____
            EDWARD JOSEPHSON (EJJ 7815)

            STEVE BANKS, ESQ., Attorney-in-Charge
            Civil Division, The Legal Aid Society
            SCOTT ROSENBERG, ESQ.,
            Attorney-in-Charge of Law Reform
            ELLEN DAVIDSON, of counsel
            199 Water Street
            New York, New York 10038
            Attorneys for Plaintiffs
            (212) 577-3300

PEGGY EARISMAN, ESQ.
MANHATTAN LEGAL SERVICES
Lesley Tse, Esq., of counsel
90 John Street
New York, NY 10013
Attorneys for Plaintiffs
 (646) 442-3150